IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| COORS BREWING COMPANY,<br>a Colorado corporation, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. 1:07 CV 1235(GBL) |
| OAK BEVERAGE, INC.,<br>a New York corporation, | )<br>)<br>) | |
| BOENING BROS., INC.,<br>a New York corporation,<br>Defendants. | )<br>)<br>) | |

### MEMORANDUM ORDER

THIS MATTER is before the Court on Defendants Oak Beverage and Boening Brother's Motion to Transfer Venue or, in the Alternative to Dismiss for Improper Venue. This case concerns Defendants' attempt to invalidate the Forum Selection Clause appearing in the Distributor Agreements between the parties, which names the Eastern District of Virginia as the location for dispute resolution, and to transfer this matter to the Southern District of New York.

There are two issues before the Court. First, whether the parties' Forum Selection Clause is enforceable under New York's Alcoholic Beverage Control Law § 55-c. Second, whether Defendants' Motion to Transfer Venue should be granted pursuant to 28 U.S.C. § 1404(a), where Plaintiff's choice of forum is the Eastern District of

1

Virginia, but Defendants, as well as some witnesses and evidence, are located in New York and Plaintiff is located in Colorado, and the matter involves interpretation of New York's Alcoholic Beverage Control Statute.

The Court finds that the Forum Selection Clause is unenforceable because § 55-c New York Alcoholic Beverage Control Law is incorporated into the parties' Distributor Agreements and supersedes the Forum Selection Clause. Furthermore, the Court finds that, notwithstanding the unenforceability of the Forum Selection Clause, the 28 U.S.C. § 1404(a) factors weigh in favor of transfer because: (1) Plaintiff's choice of forum is a foreign forum rather than Plaintiff's home forum and therefore, is entitled to little weight; (2) the Eastern District of Virginia has no connection to this case while New York has a significant interest in the interpretation of New York law; and (3) the witnesses' inconvenience will be the same whether they must travel to Virginia or New York for litigation.

## I. Background

This case comes before the Court to determine whether the parties' Distributor Agreement's Forum Selection Clause is enforceable under New York's Alcoholic Beverage Control Law § 55-c ("§ 55-c") and, regardless of the enforceability of the parties' Forum Selection Clause, whether transfer is proper under 28 U.S.C. § 1404(a).

Defendants, Oak Beverage and Boening Brothers ("O&B") are

headquartered and have their principal places of business in New York. (Compl. ¶¶ 2-3.) O&B are beer distributors representing the products of numerous suppliers, including Molson Products.[1] (Compl. ¶ 9.) Plaintiff, Coors Brewing Company ("Coors") is a Colorado corporation with its principal place of business in Golden, Colorado. (Compl. ¶ 1.)

In 1996, the Martlet Importing Co. ("Martlet") had an office in Reston, Virginia, and held the importing rights to Molson Products. In October 1996, Martlet and O&B executed Distributor Agreements for O&B to distribute Molson Products in certain New York counties. O&B's Distributor Agreements are virtually identical except for the sections relating to distribution territory. Each Distributor Agreement contains a provision mandating dispute resolution "solely and exclusively in the United States District Court for the Eastern District, Alexandria Division, State of Virginia". (Distrib. Agreement ¶ 17 (b).)

In 1997, Martlet assigned its importing rights to a joint venture comprised of the Miller Brewing Company, a Wisconsin company, and Molson Canada, a Canadian company. In 2000, the importing rights to Molson Products were assigned again, this time to a joint venture between Molson Canada and Coors Brewing Company. In 2007, the

---

1     Martlet and Coors are beer suppliers or brewers. Distributors or wholesalers such as O&B purchase beer from suppliers in order to resell, market, and promote the beer to retailers. Retailers then sell the beer to the general public. (Def.'s Mem. in Supp. Mot. to Transfer Venue 5.)

importing rights were assigned for a third time to Coors in an individual venture. (Compl. ¶¶ 3-4.) O&B have remained the distributors of Molson Products for their assigned counties in New York pursuant to the Distributor Agreements.

Plaintiff, Coors Brewing Company, is filing this declaratory action in an effort to terminate its Distributor Agreements with Defendants, O&B, pursuant to a national consolidation plan. This action is similar to the arbitration action that Plaintiff's predecessor-in-interest, Molson USA LLC ("Molson"), commenced in New York on August 2, 2007, against John G. Ryan, Inc. ("Ryan"), a former Molson distributor. In that case, Molson sought a declaration that its national consolidation plan constituted 'good cause' sufficient to grant the right to terminate its Distribution Agreement with Ryan under § 55-c.[2] (Compl. ¶ 26.) The arbitrator concluded that Molson's consolidation plan complied with the requirements of § 55 and permitted termination of the Distributor Agreement. *Id.* At a second hearing, the arbitrator determined the fair market value of the distribution rights.[3] *Id.* Molson USA applied to the United

---

2. Section 55-c permits a brewer to terminate the distribution relationship with a distributor pursuant to the brewer's national or regional plan of consolidation. The consolidation policy must result in a "contemporaneous reduction in the number of a brewer's wholesalers not only for a brand in [New York], but also for a brand in contiguous states or in a majority of the states in which the brewer sells the brand." New York's Alcoholic Beverage Control Law § 55-c(2)(e)(i)(McKinney 2001).
3. Pursuant to § 55-c, a wholesaler is required to compensate a terminated distributor the fair market value of its distribution rights. Section 55-c(9)(c)(iii).

4

States District Court for the Southern District of New York for the sole purpose of confirming the arbitration award.

This suit is similar in nature to the Ryan matter because it involves Coors Brewing Company's attempt to terminate O&B's Distribution Agreements. On January 25, 2008, the United States District Court for the Southern District of New York granted and confirmed the arbitration award. That court did not address the merits of the award because the confirmation petition was not opposed. The matter concluded with the confirmation of the award.

## II. Discussion

### A. Standard of Review

Forum Selection Clauses are "prima facie valid and should be enforced unless enforcement is shown to be unreasonable under the circumstances." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,10 (1972). "In determining unreasonableness under the circumstances, a Forum Selection Clause should be a consideration that figures centrally in a transfer analysis. It should receive neither dispositive consideration . . . nor no consideration[,] . . . but rather the consideration for which Congress provided in § 1404(a)." *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 23 (1988); *BHP Int'l Inv., Inc., v. Online Exch., Inc.*, 105 F.Supp 2d 493, 495-96 (E.D. Va. 2000).

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When considering a motion to transfer venue, a court must consider and balance the plaintiff's choice of venue, the convenience of the parties and witnesses, and the interest of justice. *GTE Wireless, Inc., v. Qualcomm, Inc.*, 71 F.Supp 2d 517, 519 (E.D. Va. 1999). The interest of justice includes circumstances such as "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties and the possibility of harassment." *Bd. of Tr., v. Baylor Heating & Air Conditioning*, 702 F.Supp. 1253, 1260 (E.D.Va. 1988). The movant bears the burden to establish that transfer is proper in view of these considerations. *Cognitronics Imaging Sys., Inc., v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000).

## B. Analysis

The Court grants Defendants' Motion to Transfer Venue to the Southern District of New York because the Forum Selection Clause is unenforceable. Notwithstanding the unenforcability of the Forum Selection Clause, the Court grants Defendants' Motion to Transfer Venue because Plaintiff's choice of forum is not its home forum and therefore, is entitled to little weight, the Eastern District of

6

Virginia has no connection to this case while New York has a substantial connection, and the witnesses' inconvenience will be the same whether they must travel to Virginia or New York for litigation.

### 1. Forum Selection Clause Enforceability

The Court holds that the Forum Selection Clause is unenforceable because § 55-c New York Alcoholic Beverage Control Law applies retroactively to the Distributor Agreements and renders waivers of the forum selection rights unenforceable. The O&B Distributor Agreement's Forum Selection Clause waives O&B's rights granted in § 55-c and thus, is unenforceable under § 55(c)(6).

#### *a) Retroactive Application of § 55-c to the Distributor Agreements.*

The Court finds that the 2001 amendments to § 55-c apply retroactively because the statute evinces the legislative intent to make the statute apply retroactively and the legislature's judgment is within the bounds of the Constitution.

Generally, in determining legislative intent, statutes are to be construed as prospective except in cases where the legislature clearly expresses an intention and purpose to justify retroactive application or, when failure to do so would undermine the statute's initial purpose. *See Garal Wholesalers Ltd., v. Miller Brewing Co.,* 751 N.Y.S.2d 679 (2002)(categorizing § 55-c as remedial where the legislature sought to address perceived ambiguities in the current law, justifying retroactive application).

7

On June 15, 2001, the New York State Legislature passed amendments to § 55-c which provided that "a beer wholesaler may maintain a civil action in a court of competent jurisdiction within [New York] . . ." § 55-c (McKinney 2001). The New York legislature expressly provided that "[t]his act shall take effect immediately and shall be deemed to have been in full force and effect on and after June 15, 2001, and shall apply to agreements amended, canceled, terminated, modified or not renewed on or after such date". New York's Alcoholic Beverage Control Law § 55-c (McKinney 2001).

The statute's original purpose, when it was enacted in 1996, was "to provide a more equitable framework for the business dealings between beer brewers and importers and their wholesalers" and to protect wholesalers "from arbitrary termination and denial of the appointment of their successors". *See Garal,* 751 N.Y.S.2d at 693 (*citing* Governor's Bill Jacket, L 1996, ch 679, at 4). The 2001 amendments seek to further the statute's original purpose by providing beer wholesalers access to venue in courts within the state of New York.

In this case, the New York legislature clearly expressed an intention and purpose to justify retroactive application and failure to do so would undermine the statutes initial purpose. Retroactive application is therefore proper.

Plaintiff, in its Complaint, challenges the constitutionality of retroactive application of § 55-c as it pertains to the Contract

Clause of the United States Constitution. (Compl. ¶¶ 36, 38.) In considering whether a state law violates the Contract Clause, the threshold question is whether the state law substantially impairs a contractual relationship. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983); *Schieffelin & Co. v. Dep't of Liquor Control*, 479 A.2d 1191, 1199 (Conn. 1984). To determine the severity of an impairment, the court must consider, first, the extent to which the law frustrates a party's "reasonable expectations," and, second, the extent to which the area has been subjected to previous regulation. *Id.*

In this case, Plaintiff could not have reasonably relied on the continuity of the statutory scheme when the Distributor Agreements provided that they were subject to alteration by state law. (*See* Distrib. Agreement, ¶ 17 (a).) The parties in this matter contracted in an area that is historically "heavily regulated." *Garal*, 751 N.Y.S.2d at 637. Because of heavy regulation in this area of law, Plaintiff should have anticipated legislative alterations. Retroactive application of § 55-c, therefore, does not substantially impair the parties' reasonable expectations under the Distributor Agreements or impose unreasonable consequences sufficient to constitute violation of the Contract Clause.

The New York legislature expressed a clear intent for the statute to be applied retroactively. Failure to apply § 55-c retroactively would conflict with that intent. Furthermore,

9

retroactive application of § 55-c does not substantially impair the parties' contractual relationship so severely that it violates the Contract Clause. Therefore, the Court holds that retroactive application of § 55-c to the parties' Distributor Agreements is proper and the Distributor Agreement's Forum Selection Clause is unenforceable given the statutory right granted to distributors to maintain actions in New York.

### *b) Validity of ¶ 17 (b) waiver of the § 55-c right.*

Having concluded that the 2001 amendments apply retroactively, the Court finds § 55-c's "anti-waiver clause" controlling. The Forum Selection Clause is, thus, unenforceable because it constitutes "waiver or modification" of the § 55-c right for beer wholesalers to maintain actions in New York.

The 1997 amendments to § 55-c(11) provides that "[t]he requirements of this section may not be altered, waived, or modified by written or oral agreement in advance of a bona fide case or controversy." § 55-c(11).

O&B entered into Distributor Agreements with Martlet on October 23, 1996. (Ex. B, 9.) The Distributor Agreements provide that disputes between the parties, their successors, and assigns shall be initiated and prosecuted "solely and exclusively in the United States District Court for the Eastern District of Virginia, Alexandria Division, and each party <u>waives</u> freely and completely any right to dismiss and/or transfer any action". (Distrib. Agreement, ¶ 17 (b).)

Because O&B are original parties to the 1996 Distributor Agreements, and Coors is a successor to the agreement, all parties are bound by its terms. (Compl. ¶¶ 12-21.)

The bona fide controversy between the parties began on December 11, 2007, when Coors filed the Complaint in this matter. (Compl.) The plain language of the Forum Selection Clause "waives or modifies" the requirements of § 55-c "in advance of their bona fide case or controversy." That waiver is unambiguously prohibited by the language of § 55-c(11). The Distributor Agreements incorporate the laws of New York and provide that where conflict arises between the laws of New York and the Distributor Agreements, the laws of New York supersede any conflicting provision of the Distributor Agreements. (Distrib. Agreements, ¶ 17 (a).) As such, New York law supersedes the Distributor Agreement's Forum Selection Clause and renders the parties' waiver of any right to dismiss or transfer action invalid.

Accordingly, the Forum Selection Clause of the Distributor Agreements is unenforceable under New York law because § 55-c prohibits waiver of the right to move to dismiss or transfer action.

### 2. 28 U.S.C. § 1404 (a)

The Court holds that Defendants' Motion to Transfer Venue is granted because Plaintiff's choice of forum, regardless of the enforceability of the parties' Forum Selection Clause, is clearly outweighed by other factors in the transfer analysis such as the chosen forum's lack of connection to the cause of action, the

11

convenience of the parties, and the interest of having local controversies decided at home.

In deciding a Motion to Transfer, the Court considers the following factors: (1) Plaintiff's choice of forum; (2) the ease of access to sources of proof; (3) the convenience of parties and witnesses; (4) the interest of having local controversies decided at home; (5) and the interest of justice. *See Intranexus, Inc., v. Siemens Med. Solutions Health Serv. Corp.*, 227 F.Supp 2d 581, 583 (E.D. Va. 2002).

The Court finds that each of these factors either weighs in favor of transfer or weighs neutrally in the transfer analysis. Thus, notwithstanding the enforceability of the Forum Selection Clause, the Court finds that transfer to the Southern District of New York is in the interest of justice.

### a) Plaintiff's Choice of Forum

The Court finds that the plaintiff's choice of forum factor weighs in favor of transfer to the Southern District of New York because the Forum Selection Clause is unenforceable, Plaintiff's choice of forum is a foreign forum rather than its home forum, and Virginia has no connection to the controversy.

Generally, a plaintiff's choice of forum is entitled to substantial weight, which varies according to the connection between the forum and the cause of action. *Acterna, L.L.C., v. Adtech, Inc.*, 129 F. Supp. 2d 936, 937 (E.D.Va. 2001). Consistent with the Supreme

Court precedent established in *Brenmen v. Zapata Off Shore Co.*, 407 U.S. 1, 10 (1972), the Fourth Circuit generally enforces Forum Selection Clauses; thus, the weight given to Plaintiff's choice of forum is increased to some extent. *Sterling Forest Assocs., Ltd., v. Barnett-Range Corp.*, 840 F.2d 249, 250 (4th Cir. 1988). While the existence of a Forum Selection Clause is not a controlling factor, it is significant. *Stewart,* 487 U.S. at 22; *Baylor,* 702 F. Supp. at 1257; *BHP Int'l Inv., Inc.,* 105 F. Supp. 2d at 495-96. Before transfer is warranted, a defendant must demonstrate that a plaintiff's choice of forum is clearly outweighed by other factors. *Baylor,* 702 F. Supp. at 1256.

In this case, the Forum Selection Clause is unenforceable; thus, Plaintiff's choice of forum is afforded less weight. Even if the Forum Selection Clause were valid, Plaintiff's choice of forum is entitled to little weight because the Eastern District of Virginia is a foreign forum rather than Plaintiff's home forum, as Plaintiff is a Colorado corporation with its principal place of business in Colorado. (Compl. ¶ 1.) The dispute pertains to O&B's distribution of beer in the state of New York pursuant to Distributor Agreements, which are governed by New York law. (Compl. ¶¶ 12, 13); (Distrib. Agreement ¶ 17 (a).) Moreover, the Eastern District of Virginia has no connection with this case because the actions giving rise to the dispute occurred in New York, the case is governed by New York law, and the case must be determined by the interpretation of New York's

13

Alcoholic Beverage Control law.

Accordingly, Plaintiff's choice of forum in this case carries little significance, and is afforded little weight in the transfer analysis.

### *b) The Convenience of Parties and Witnesses*

The Court finds that the convenience of the parties and witnesses factor weighs in favor of transfer because four of the witnesses are located in New York, while none are located in Virginia.

In a motion to transfer venue, the court must weigh the convenience of the parties and witnesses. *Acterna*, 129 F. Supp. 2d at 939. When using this factor to influence a transfer of venue, the movant must identify the prospective witnesses and specifically describe their proposed testimony. This is "necessary to enable the court to ascertain how much weight to give a claim of inconvenience." *Baylor*, 702 F. Supp. at 1257. A plaintiff is assumed to have filed suit in the forum most convenient for it. *Id.* at 1259. If the result of transfer would only serve to shift the balance of inconvenience, then the motion to transfer venue will be denied. *Id.*

Defendants are headquartered and have their principal places of business in New York. (Def.'s Mem. in Supp. Mot. to Transfer Venue 1.) Defendants claim that "[a]ll of the documents and witnesses relating to the action are located in either New York, or Colorado; none are located in Virginia". (*Id.* at 4.) Defendants have

14

identified four witnesses located in New York, their positions within Defendants' company, and the reasons which necessitate their testimony. This satisfies the requirement of a persuasive showing of specific and detailed information as to the relevance of witnesses and documents located in New York. *Baylor*, 702 F. Supp. at 1258.

Although Plaintiff is assumed to have filed suit in the forum most convenient for it, no facts support this assumption. Plaintiff is a Colorado company whose documents and witnesses are located in Colorado. Virginia is no more convenient than New York because both forums require Plaintiff's witnesses to travel a significant distance. Consequently, Plaintiff's convenience will not be increased nor decreased by litigating in New York rather than Virginia, while Defendants' convenience will increase if transfer to New York is granted. Transfer would not "shift the balance of inconvenience" from Defendants to Plaintiff but only increase the convenience for Defendants. *Baylor*, 702 F. Supp. at 1258. The Court, therefore, concludes that convenience of the parties' witnesses weighs in favor of granting the Defendants' Motion to Transfer Venue to the Southern District of New York.

### *c) Having Local Controversies Decided at Home*

The having local controversies decided at home factor weighs in favor of transfer because the issues presented in this matter require interpretation of New York law, and Virginia does not have any interest in interpreting New York law.

15

Local courts have a strong interest in having local controversies decided at home. *See BHP Int'l Inv., Inc.*, 105 F. Supp. 2d at 499 (finding that local forum would be better equipped to interpret the local statute that was in question). Neither Plaintiff nor Defendants conduct business or have significant contacts with Virginia. The cause of action occurred in New York, as performance of the Distributor Agreements occur solely in New York. Furthermore, this case turns on interpretation and application of a New York statute. Thus, the interest in having this local controversy decided at home weighs in favor of transfer.

### d) *Interest of Justice*

The Court finds that the interest of justice weighs in favor of granting Defendants' Motion to Transfer Venue because while the pendency of the related action, docket conditions, the possibility of unfair trial and access to premises that might have to be viewed weigh neutrally, the Court's familiarity with the applicable law, the ability to join other parties and the possibility of harassment all weigh in favor of transfer.

"The 'interest of justice' category is designedly broad." *Baylor*, 702 F. Supp. at 1260. A district court is required to consider this factor unrelated to witnesses and party convenience. *Acterna*, 129 F. Supp. 2d at 939-940. The court should consider circumstances such as "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to

16

premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties and the possibility of harassment." *Baylor*, 702 F. Supp. at 1260.

In general, the pendency of a related action in the transferee forum favors transfer. *Id.* at 1261. However, the general rule is inapplicable here because consolidation is not possible as the Ryan matter has concluded. (Compl. ¶¶ 29-30.) Therefore, possibility of consolidation receives no consideration in the transfer analysis.

The Court's unfamiliarity with the applicable law does, however, weigh in favor of transfer. The parties agree that New York's Alcoholic Beverage Control statute governs the Distributor Agreements. While the Court could familiarize itself with New York law, New York courts have a strong interest in having local controversies such as this one, decided at home. *BHP Int'l Inv., Inc.*, 105 F. Supp. 2d at 499.

Finally, the last issue to consider in the interest of justice is the ability to join other parties, specifically the New York Attorney General. Defendants claim that denial of its Motion to Transfer Venue would effectively prohibit the New York Attorney General from intervening. The Attorney General has a right to intervene because the constitutionality of a state statute is being challenged. (Def.'s Mem. in Supp. Mot. to Transfer Venue 14.) Plaintiff claims that it is not challenging the constitutionality of New York's Alcoholic Beverage Control Law and therefore, is not

17

required to join the New York Attorney General. (Pl.'s Opp. to Mot. to Transfer Venue 17.)

The Court finds that the clear and unambiguous language of Plaintiff's Complaint undoubtedly challenges the constitutionality of New York's Alcoholic Beverage Control Law. (*See* Compl. ¶¶ 36, 38.) Consequently, Plaintiff is required to notify the New York Attorney General pursuant to Federal Rule of Civil Procedure 5.1(a)(2) which states: "[a] party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must . . . serve the notice and paper on the . . . state attorney general if a state statute is in question. . . ."

Should the New York Attorney General choose to intervene in this action, the convenience of the parties would include the convenience of the New York Attorney General. While the New York Attorney General could travel to Virginia, it would be an inconvenient forum in contrast with the Southern District of New York. Although the convenience of the New York Attorney General is not determinative, it weighs in favor of transfer.

The Court finds that the "interest of justice" factors weigh in favor of granting Defendants' Motion to Transfer Venue to the Southern District of New York.

### III. Conclusion

After giving due weight to all of the applicable factors, the Court finds that Defendants' Motion to Transfer Venue is granted

18

because the 28 U.S.C. 1404(a) factors weigh in favor of transferring this case to the Southern District of New York.

Although Forum Selection Clauses are generally a consideration that figures centrally in a transfer analysis, in this case, the parties' Forum Selection Clause warrants little consideration, as its terms are unenforceable. Notwithstanding the Court's determination that the Distributor Agreement's Forum Selection Clause is unenforceable under New York law, the Court finds that transfer is proper under § 1404(a).

The 28 U.S.C. § 1404(a) factors weigh in favor of transfer. The Plaintiff's choice of forum factor has little weight because Virginia is not Plaintiff's home forum, nor is there any connection to the cause of action in contrast to New York, which is closely connected to this case. This factor weighs in favor of transfer. The convenience of the parties factor weighs in favor of transfer to the Southern District of New York because four of Defendants' witnesses are located in New York and none of the witnesses or documents are located in Virginia. The interest of having local controversies decided at home factor weighs in favor of transfer because New York has an interest in deciding New York law.

Finally, the interest of justice factors weigh in favor of transfer to the Southern District of New York because while the pendency of the related action, docket conditions, the possibility of unfair trial weigh neutrally, the Court's familiarity with the

applicable law, the ability to join other parties and, the possibility of harassment all weigh in favor of transfer.

These factors tip the § 1404(a) analysis in favor of Defendants' Motion to Transfer and therefore, notwithstanding the unenforcability of the Distributor Agreement's Forum Selection Clause under New York law, the Court finds that transferring this case to the Southern District of New York is proper.

Accordingly, it is hereby ORDERED that Defendants O&B's Motion to Transfer Venue is GRANTED. This case is transferred to the United States District Court for the Southern District of New York.

The Clerk is directed to forward a copy of this order to Counsel.

Entered this 17th day of April, 2008.

/s/
Gerald Bruce Lee
United States District Judge


Alexandria, Virginia
4/17/08